UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
SECURITIES AND EXCHANGE COMMISSION,

                                Plaintiff,                    **MEMORANDUM OF**
  -against-                                           **DECISION AND ORDER**
                                                                     12-CV-1065 (ADS)(AKT)

BRIAN RAYMOND CALLAHAN, ADAM MANSON,
DISTINCTIVE INVESTMENTS LLC, and
DISTINCTIVE VENTURES LLC,

                                Defendants.

SHERI MANSON CALLAHAN,

                                Relief Defendant.
----------------------------------------------------------X

**APPEARANCES:**

**Gottesman, Wolgel, Secunda, Malamy & Flynn, P.C.**
*Attorneys for the Receiver Steven Weinberg*
11 Hanover Square, 4th Floor
New York, NY 10005
    By:  Steven Weinberg, Esq.
         Stewart W. Lee, Esq.
         Richard B. Demas, Esq., Of Counsel

**United States Securities and Exchange Commission**
*Attorneys for the Plaintiff*
100 F. Street, NE
Washington, DC 20549
    By:  Dean M. Conway, Assistant Chief Litigation Counsel

**Sher Tremonte LLP**
*Attorneys for the Defendant Brian Raymond Callahan and for the Relief Defendant Sheri Manson Callahan*
41 Madison Avenue, 41st Floor
New York, NY 10010
    By:  Michael Tremonte, Esq.
         Mark Elliot Cuccaro, Esq.
         Robert Knuts, Esq.
         Robert L. Herskovits, Esq., Of Counsel

**Law Offices of Andrew J. Frisch**
*Attorneys for the Defendants Adam Judd Manson, Distinctive Investments LLC and Distinctive Ventures LLC*
40 Fulton Street, 23rd Floor
New York, NY 10038
      By:   Andrew J. Frisch, Esq., Of Counsel

**Morvillo, Abramowitz, Grand, Iason, Anello & Bohrer**
*Attorneys for the Defendant Adam Judd Manson, Distinctive Investments LLC and Distinctive Ventures LLC*
565 Fifth Avenue
New York, NY 10017
      By:   Robert J. Anello, Esq.
            Gates Salyers Hurand, Esq.
            Judith L. Mogul, Esq., Of Counsel

**Brian Spears LLC**
*Attorneys for Interested Party Brian F. Callahan*
2425 Post Road, Suite 203
Southport, CT 06890
      By:   Brian Edward Spears, Esq., Of Counsel

**United States Attorney's Office**
*Attorneys for Intervenor United States Attorney for the Eastern District of New York*
271 Cadman Plaza East
Brooklyn, NY 11201
      By:   David C. Woll, Jr., Assistant United States Attorney
            Karin K. Orenstein, Assistant United States Attorney

**LeClair Ryan, PC**
*Attorneys for Intervenor RBS Citizens, National Association*
830 Third Avenue, 5th Floor
New York, NY 10022
      By:   Michael Terrance Conway, Esq., Of Counsel

**SPATT, District Judge.**

In this securities fraud action, the Plaintiff United States Securities Exchange Commission (the "SEC") alleges that in violation of § 17(a)(1), (2) and (3) of the Securities Act, § 10(b) of the Exchange Act and §§ 206(1), (2) and (4) of the Advisers Act, the Defendants Brian Raymond Callahan ("Callahan"), Adam Judd Manson ("Manson"), Distinctive Investments, LLC ("Distinctive Investments") and Distinctive Ventures, LLC ("Distinctive

Ventures," and collectively, the "Defendants") engaged in or aided and abetted "a long-running fraudulent Ponzi scheme in which investors were routinely misled about the nature of their investments and also were unaware of [the] frequent misuse and misappropriation of their money." (Amend. Compl., ¶ 1.)

Presently before the Court is a motion by Callahan to modify the Court's March 27, 2012 and June 4, 2012 Preliminary Injunction Orders (collectively, the "Preliminary Injunction"), in which the Court, in relevant part, established a Receivership, appointed a Receiver and issued an "Asset Freeze." In this regard, Callahan seeks an Order by this Court releasing certain frozen assets in the amount of $480,261.22 belonging to Diversified Global Partners, Ltd. ("Diversified"), the general partner of Horizon Millennium Investments, L.P. ("Horizon Millennium"), for the payment of past and future legal fees and expense incurred by Callahan in both this action and in the related civil forfeiture and criminal proceedings. Callahan also seeks an order by this Court releasing approximately $26,305.92 in escrow funds that are currently held by the law firm Park & Jensen LLP ("Park & Jensen") to reduce the outstanding balance of fees and expenses owed to that firm.

According to Callahan, if the Court declines to grant his motion, he will be unable to afford to retain his present counsel. Of note, Callahan's counsel has moved, with Callahan's consent, to withdraw as his attorneys in this action in the event the Court denies the requested relief. Callahan's counsel has filed a similar motion to withdraw in the related criminal action. These two motions are also pending before the Court.

The Court pauses here to note that the SEC's opposition papers use footnotes, which is contrary to this Court's Individual Rule II.A. Notwithstanding this infraction, the Court will

consider the SEC's papers in rendering its decision. However, the Court advises SEC's counsel that any future filings that contain footnotes will not be considered by this Court.

For the reasons that follow, the Court denies the motion by Callahan to modify the Preliminary Injunction. As such, the Court grants the motions by Callahan's counsel to withdraw as Callahan's attorney in this action and in the related criminal action.

## I. BACKGROUND

On March 5, 2012, the SEC commenced this action against Callahan, Horizon Global Advisors Ltd. ("HGA Ltd.") and Horizon Global Advisors, LLC ("HGA LLC"). The SEC alleged that, in violation of § 17(a)(1), (2) and (3) of the Securities Act, § 10(b) of the Exchange Act and §§ 206(1), (2) and (4) of the Advisers Act, Callahan, HGA Ltd. and HGA LLC "engaged in a long-running fraud in which investors were routinely misled about the nature of their investments and also were unaware of [Callahan, HGA Ltd. and HGA LLC's] frequent misuse and misappropriation of their money." (Orig. Compl., ¶ 1.)

On March 27, 2012, the Court issued a preliminary injunction in which it placed HGA Ltd. and HGA LLC into Receivership and appointed Steven Weinberg ("Weinberg") as their Receiver (the "March 27, 2012 Order"). The March 27, 2012 Order also instituted an "Asset Freeze," as follows:

> "Receivership Assets" are hereby defined as all assets titled in the name of the Receivership Defendants. Except as otherwise specified herein, all Receivership Assets and all of the funds and other assets of the Defendants presently held by them, for their direct or indirect benefit, under their direct or indirect control or over which they exercise actual or apparent investment or other authority, in whatever form such assets may presently exist and wherever located . . . are frozen until further order of this Court. Accordingly, all personas and entities with direct or indirect control over any Receivership Assets and/or any assets frozen by this Order other than the Receiver, are hereby restrained and enjoined from directly or indirectly transferring, setting off,

>receiving, changing, selling, pledging, assigning, liquidating or otherwise disposing of or withdrawing such assets.

(March 27, 2012 Order, ¶ 3.)

On May 31, 2012, the SEC filed an Amended Complaint and added the following parties as defendants in this action: Diversified, The Masters Global Fund, L.P. ("Masters"), Fiduciary Select Income Fund, L.P. ("Fiduciary"), Horizon Millennium, Pangea Offshore High Yield Portfolio, LLC ("Pangea High Yield"), Manson, Distinctive Investments and Distinctive Ventures. In addition, Callahan's wife and Manson's sister, Sheri Manson-Callahan ("Manson-Callahan"), was added as a relief defendant.

Similar to the Original Complaint, the Amended Complaint alleges that in violation of § 17(a)(1), (2) and (3) of the Securities Act, § 10(b) of the Exchange Act and §§ 206(1), (2) and (4) of the Advisers Act, Callahan, HGA LLC, HGA Ltd., Diversified, Masters, Fiduciary, Horizon Millennium, and Pangea High Yield "engaged in a long-running fraudulent Ponzi scheme in which investors were routinely misled about the nature of their investments and also were unaware of [the] frequent misuse and misappropriation of their money." (Amend. Compl., ¶ 1.) In this regard, from some point in 2005 to January of 2012, Callahan allegedly raised more than $90 million from at least forty-five investors (the "Investors") for five offshore funds, which were the defendants Diversified, Masters, Fiduciary, Horizon Millennium and Pangea High Yield (the "Callahan Funds"). According to the SEC, Callahan operated the Callahan Funds directly or through HGA Ltd. and HGA LLC.

The Amended Complaint further alleges that Manson and his two entities, Distinctive Investments and Distinctive Ventures "aided and abetted Callahan's fraudulent scheme." (Amend. Compl, ¶ 1.) Allegedly, Manson, Distinctive Investments and Distinctive Ventures received millions of dollars in loans from the Callahan Funds in order to purchase and renovate a

5

real estate project in Montauk, New York (the "Montauk Property"), as well as to pay off debts and obligations which were owed by Distinctive Investments and Distinctive Ventures, and guaranteed by Manson.

Also on May 31, 2012, the SEC and the Callahan Funds entered into a stipulation which placed the Callahan Funds into Receivership with Weinberg being their Receiver. The stipulation fully incorporated the terms of the March 27, 2012 Order, including the Asset Freeze provision. The Court "so ordered" this stipulation on June 4, 2012.

On March 9, 2013, the Court approved a consent judgment against HGA Ltd., HGA LLC, Diversified, Masters, Fiduciary, Horizon Millennium and Pangea High Yield. As a result, the only remaining Defendants in this case are Callahan, Manson, Distinctive Investments and Distinctive Ventures. Manson-Callahan remains the relief defendant.

On February 22, 2014, the Court issued an order in the related civil forfeiture proceeding United States v. The Real Property Located at 272 Old Montauk Highway, Montauk, New York 11954, and All Proceeds Traceable Thereto, et al., Case No. 12-CV-1880 (E.D.N.Y.) (the "Civil Forfeiture Action"), which held that the interlocutory sale of the Montauk Property was both necessary and appropriate under 18 U.S.C. § 981(g)(6) and Rule G(7) of the Supplemental Rules of Certain Admiralty and Maritime Claims and Asset Forfeiture Actions (the "February 22, 2014 Order"). However, the Court also determined that the interlocutory sale proposed by the United States of America (the "Government") in conjunction with HFZ Capital, LLC ("HFZ"), who sought to purchase the Montauk Property, was commercially unreasonable. The Court permitted the Government and HFZ to submit a revised proposal for a sale of the Montauk Property within thirty days of the date of the February 22, 2014 Order.

Thereafter, on March 27, 2014, the Court issued an order in this action and in the Civil Forfeiture Action in which the Court modified the Preliminary Injunction by (1) removing a set of fifty-eight unsecured promissory notes made by Distinctive Investments to Receivership Entities Fiduciary and Diversified (the "Notes") and (2) withdrawing the Receiver's authority to sell the Notes.  Further, the Court directed the Government to proceed forward with the sale of the Montauk Property by having a closed bidding process with a bid package and preset contract, therefore avoiding broker's fees, breakup fees and lengthy contract negotiations.

In addition, the Court notes that on April 29, 2014, after Callahan made the present motions currently pending before the Court, Callahan pled guilty in the related criminal proceeding, United States of America v. Brian Callahan, Case No. 13-CR-453-1 (the "Criminal Action"), which the Court accepted based on the recommendation of United States Magistrate Judge A. Kathleen Tomlinson.  In this regard, Callahan pled guilty to Count Four and Count Eleven of the Indictment, which charged the Defendant with securities fraud and substantive wire fraud, respectively.  However, Callahan maintains that despite his guilty plea, his request for relief from the Preliminary Injunction's Asset Freeze provision remains unchanged.

## II. DISCUSSION

### A. Legal Standard

"Where, as here, those charged with criminal offenses seek to lift an asset freeze to obtain funds for the payment of legal fees and costs, there is brought into conflict the competing interests of allegedly defrauded investors in obtaining the return of funds and those of the criminal defendants under the Fifth And Sixth Amendments in obtaining sufficient funds to retain the counsel of their choice." SEC v. McGinn, No. 10–CV–457 (GLS/DRH), 2012 WL 1142516, at *2 (N.D.N.Y. Apr. 4, 2012).  Nevertheless, "while a criminal defendant has the

7

Sixth Amendment right to retain the counsel of his or her choice, the defendant may not use funds obtained from criminal activity to do so." Id. (citing United States v. Monsanto, 491 U.S. 600, 603, 109 S. Ct. 2657, 105 L. Ed. 2d 512 (1989); SEC v. Cherif, 933 F.2d 403, 416–17 (7th Cir. 1991)); see also SEC v. Credit Bancorp Ltd., No. 99 Civ. 11395, 2010 WL 768944, at * 3 (S.D.N.Y. Mar. 8, 2010) ("[A] defendant does not have the right to use the frozen funds [consisting of stolen money] for attorney's fees, even if those funds are the only way that a defendant would be able to retain the attorney of his choice.").

In this regard, "[t]he Court evaluates an application to unfreeze assets for payment of attorneys' fees [ ] in light of the principle that 'neither civil nor criminal defendants have the right to use frozen investor funds to pay their counsel.'" Richards v. Mountain Capital Mgmt., L.L.C., 10 CIV. 2790 RMB JCF, 2010 WL 2473588, at *2 (S.D.N.Y. June 17, 2010) (quoting Credit Bancorp Ltd., 2010 WL 768944, at *3) (internal brackets omitted). Accordingly, "[t]o succeed on a motion to modify [a] freeze to permit payment of attorneys' fees and other expenses, [a] defendant 'must establish that such a modification is in the interest of defrauded investors.'" Id., at *2 (quoting Credit Bancorp Ltd., 2010 WL 768944, at *4).

In other words, a criminal defendant's assets may continue to be restrained so long as "the government demonstrated that the assets being restrained were the proceeds of criminal activity even where a defendant demonstrated a need to obtain fund from the assets to retain counsel to defend the criminal charges." McGinn, 2012 WL 1142516, at *2 (citing United States v. Monsanto, 924 F.2d 1186, 1203 (2d Cir. 1991)). These factors "appl[y] equally in an SEC civil enforcement action [where there is a parallel criminal action] and, therefore, assets should continue to be restrained if traceable to criminal activity but, if not, [can] be released to permit a

8

criminal defendant to retain the counsel of his or her choice." Id. (citing SEC v. Coates, NO. 94 CIV. 5361(KMW), 1994 WL 45558 (S.D.N.Y. Aug. 23, 1994)).

**B.  As to Callahan's Motion to Modify the Preliminary Injunction**

In this case, Callahan asks the court to modify the preliminary injunction and release to him $480,261.22 in liquid funds from Horizon Millennium that belong to Diversified so that he can pay his legal expenses both in this action and in the Criminal Action.  He also seeks to lift the asset freeze on the $26,305.92 in funds being held in escrow by Park & Jensen and to allow those funds to be applied toward the remaining outstanding fees owed to that firm.  According to Callahan, Diversified owes him a contractual right of indemnification arising out of matters pertaining to its operations, including this lawsuit and the Criminal Action.  Callahan further suggests that, in turn, Horizon Millennium has a similar obligation to indemnify Diversified for legal matters.

However, the Court finds that Callahan is not entitled to these funds.  First, "[p]utting to one side whether [Callahan is entitled to] indemnification . . . and whether he can claim such a right from a company that he controls, his argument elides the point that the record reflects at least probable cause to believe that the moneys in question are not properly corporate funds but rather the proceeds of a fraudulent scheme for which [Callahan] and [Mason] now face criminal charges."  SEC v. Cobalt Multifamily Investors, I LLC, 06CIV.2360(KMW)(MHD), 2007 WL 1040309, at *3 (S.D.N.Y. Apr. 2, 2007).  Indeed, Callahan has even pled guilty to a count of securities fraud and a count of substantive wire fraud in connection with the alleged Ponzi scheme at issue here.  This Ponzi scheme apparently involved diverting the Investors' monies to the Callahan Funds, which includes Horizon Millennium and Diversified.  Thus, "[Callahan]–

even if otherwise entitled to corporate indemnification–is plainly not entitled to avail himself of these moneys." Id. (collecting cases).

Moreover, "[t]o persuade a court to unfreeze assets, [Callahan] must establish that the funds he seeks to release are untainted and that there are sufficient funds to satisfy any disgorgement remedy that might be ordered in the event a violation is established at trial." SEC v. Stein, 07 CIV. 3125GEL, 2009 WL 1181061, at *1 (S.D.N.Y. Apr. 30, 2009) (citing SEC v. Roor, No. 99 Civ. 3372(JSM), 1999 WL 553823 at *3 (S.D.N.Y. July 29, 1999)). Indeed, in issuing the Preliminary Injunction following a review of the evidence and which was stipulated to by the parties, the Court clearly "determined . . . that the evidence set forth by the SEC was sufficient to warrant a freeze." Credit Bancorp Ltd., 2010 WL 768944, at * 3. Here, Callahan "has made no showing that the funds he seeks are not part of the securities fraud," despite the fact that in order "[t]o succeed on a motion to modify freeze to permit payment of attorneys' fees and other expenses, [a] defendant 'must establish that such a modification is in the interest of defrauded investors.'" Id., at *4 (quoting SEC v. Grossman, 887 F. Supp. 649, 661 (S.D.N.Y. 1995), aff'd sub. nom. SEC v. Estate of Hirshberg, 101 F.3d 109 (2d Cir. 1996)).

Indeed, even the evidence submitted by the SEC in opposition to Callahan's motion demonstrates that the funds Callahan seeks access to are comprised of monies from the allegedly defrauded Investors. For example, the funds currently in Horizon Millennium's possession apparently consist of (1) wire transfers from investors into the Horizon Millennium VP bank account between April 30, 2007 and June 28, 2007, in the approximate sum of $5,771,083.40 and (2) deposits from the Investors into Horizon Millennium VP bank account between January 1, 2008 and January 2, 2009, in the approximate sum of $1,153,315.30. These wire transfers and deposits from the Investors were thereafter transferred from the Horizon Millennium VP bank

account to Millennium USA. In fact, an alleged shortfall exists of over $4.8 million in assets belonging solely to Horizon Millennium. It is worth noting that there is also a shortfall of over $58 million dollars in assets in all of the Callahan Funds. Moreover, of importance, Callahan has presented no evidence that would indicate that Horizon Millennium has any assets other than the monies from the Investors.

In sum, Callahan is charged in this action with defrauding the Investors of $65 million to $90 million, and he has even pled guilty to a count of securities fraud and a count of substantive wire fraud in the related Criminal Action. As of December 31, 2011, only approximately $6.4 million remained of the Investors' funds, although additional monies will be generated for the Investors once the Montauk Property is sold in the Civil Forfeiture Action. Nevertheless, Callahan claims to have less than $50,000 in liquid assets, far less than would be needed in the event the Court orders a disgorgement remedy to repay the defrauded Investors.

Accordingly, the Court finds that, in this case, "[a] continued asset freeze is appropriate to preserve the status quo pending a determination on the merits because there is a likelihood that the SEC will succeed on the merits in establishing a § 10(b) violation," and "the SEC is entitled upon an adequate showing (which it has made) to an asset freeze sufficient to preserve its disgorgement remedy as well as assets necessary to pay civil monetary penalties." SEC v. Maillard, 13-CV-5299 VEC, 2014 WL 1660024, at *4 (S.D.N.Y. Apr. 23, 2014) (citations omitted); see also SEC v. Zubkis, 97 CIV. 8086 (JGK), 2003 WL 22118978, at *5 (S.D.N.Y. Sept. 11, 2003) ("An interim asset freeze is one remedy that the Court may employ to preserve the basis for a disgorgement remedy. An asset freeze 'assures that any funds that may become due can be collected.'") (quoting SEC v. Unifund SAL, 910 F.2d 1028, 1041 (2d Cir. 1990)) (additional citations omitted).

As a final matter, in light of the Court's decision to deny Callahan's request to modify the Preliminary Injunction so that he can access frozen assets to pay his legal expenses, the Court grants the two motions by Callahan's counsel to withdraw as Callahan's attorney in this case and in the Criminal Action.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED**, that Callahan's motion to modify the Preliminary Injunction is denied in its entirety; and it is further

**ORDERED**, that the motions by Callahan's counsel to withdraw as Callahan's attorney in this case and in the related Criminal Action, Case No. 13-CR-453-1, is hereby granted. Callahan will be afforded thirty days from the date of this Order to obtain new counsel. In the event he cannot afford to retain counsel in the Criminal Action, the Court shall appoint counsel for him.

**SO ORDERED.**
Dated: Central Islip, New York
       May 17, 2014

_____/s/ Arthur D. Spatt_____
ARTHUR D. SPATT
United States District Judge